UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:14-cv-00099-MOC
[Bankruptcy No. 11-10053]

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **BILTMORE INVESTMENTS, LTD.,** | ) | |
| | ) | |
| Debtor. | ) | ORDER |
| _____ | ) | |
| | ) | |
| **BILTMORE INVESTMENTS, LTD.** | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **TD BANK, N.A.,** | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

**THIS MATTER** is before the court on Biltmore Investments, Ltd.'s Notice of Appeal (#1) of the Order Denying Biltmore's Motion for Rehearing and/or Reconsideration (Case 11-10053, Docket Number ("Doc.") 186), entered by the Honorable George R. Hodges of the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court") on April 10, 2014. Judge Hodges' Order denying Biltmore's motion reaffirmed its Order of February 27, 2014, which granted TD Bank, N.A.'s Motion for Order Stating that the Automatic Stay Does Not Apply or for Relief from the Automatic Stay ("Bank's Motion"). (Doc. 172). The court considers this matter as an appeal of both of the relevant Bankruptcy Court Orders. The court heard oral arguments from the parties on November 4, 2014. Having carefully

-1-

considered the appeal, the briefs, and the oral arguments, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

The central inquiry in this appeal is whether "unusual circumstances" exist in this case under the guidance set forth in <u>A.H. Robins Co. v. Piccinin</u>, 788 F.2d 994 (4th Cir. 1986), to warrant application of the automatic stay provisions of 11 U.S.C. § 362 to TD Bank, N.A.'s ("TD Bank") state court actions as against the Debtor and its principal and controlling shareholder, Walter T. McGee. Under 11 U.S.C. § 362(a), the filing of a Chapter 11 bankruptcy petition automatically stays all proceedings against the bankruptcy debtor and all actions to obtain possession of, or to exercise control over, property of the bankruptcy estate. 11 U.S.C. § 362(a)(1), (3); <u>Kreisler v. Goldberg</u>, 478 F.3d 209, 212-13 (4th Cir. 2007). "The purpose of [11 U.S.C. § 362] by its various subsections is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor." <u>A.H. Robins</u>, 788 F.2d at 998.

The automatic stay provision of "Subsection (a)(1) is generally said to be available only to the debtor, not third party defendants or co-defendants." <u>Id.</u> at 999. <u>See also</u> <u>In re Advanced Ribbons & Office Products, Inc.</u>, 125 B.R. 259, 263 (B.A.P. 9th Cir. 1991) ("The automatic stay of section 362(a) protects only the debtor, property of the debtor or property of the estate."). The Fourth Circuit has, however, recognized an exception to this general rule, allowing bankruptcy courts to extend the protections of the automatic stay to non-bankrupt codefendants in "unusual

circumstances." A.H. Robins, 788 F.2d at 999. The Fourth Circuit has explained that "unusual circumstances" exist where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real-party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." Id. For the reasons that follow, the court finds that unusual circumstances do exist in this case, and will therefore **REVERSE** the Bankruptcy Court's decision.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Appellant, Biltmore Investments, Ltd., ("Biltmore" or "Debtor") is a North Carolina corporation organized in 1987 that is in the business of operating manufactured home parks, renting manufactured home spaces, and renting and selling manufactured homes. Walter T. McGee ("Mr. McGee") is the President of Biltmore. Biltmore is a closely held corporation, whereby Mr. McGee is in control of the company, as a common shareholder with certain preferred shareholder obligations to a former Corporation member and shareholder. Biltmore owns real property in Henderson County, North Carolina, which includes a manufactured home park known as Bear Wallow Mobile Home Park, together with 21 residential mobile home trailers and certain personal property. (Doc. 102). Appellee TD Bank is Biltmore's largest secured creditor. Biltmore filed its voluntary Chapter 11 Petition on January 26, 2011.

### A. Plan of Reorganization

On November 21, 2012, Biltmore filed a proposed Chapter 11 First Amended Plan of Reorganization (the "Plan"). (Doc. 122). Biltmore's proposed Plan expressly stated that the Bankruptcy Court would retain jurisdiction until the Plan "has been fully consummated and closed, for adversaries, objections to claims, collecting accounts receivables, avoidance actions,

post-confirmation rights involving creditors or other matters pending post-confirmation, or as otherwise indicated in this Plan or confirmation order." (Doc. 122). Biltmore's proposed Plan contained a section setting forth "Management and Ownership," expressly stating that there would be no changes in the officers, directors, or management of Biltmore, inclusive of Mr. McGee's status as the controlling shareholder of Biltmore. Id. Under the proposed Plan, "insider loans will be paid after payment to all other classes have been paid, as income from operations allows." Id. Biltmore's proposed Plan also expressly stated that "(a)ll shareholders will retain their ownership interests" and that "the injunctive provisions provided for in 11 U.S.C. §524 are incorporated herein and act as an injunction against any acts by creditors to enforce any and all pre-petition debts/claims." Id.

This Plan also describes two pending adversary proceedings and contemplates the potential for significant recoveries for Biltmore that "might materially affect implementation of the Plan." Id. The Plan states, "In the event there is a cash recovery in either pending adversary proceeding, the net proceeds will be split between the creditors and the Debtor-in-Possession on an equal basis." Id. As brought forth by the parties at oral arguments, one of these proceedings has become highly relevant to the parties' dispute over the automatic stay. Biltmore was the plaintiff in the adversary proceeding "Biltmore Investments, Ltd. v. David D'Anza, as Trustee for D'Anza Family Trust, et al.," Case No. 11-01021, United States Bankruptcy Court for the Western District of North Carolina, Asheville Division ("D'Anza Adversary Proceeding"), which ultimately settled for the gross amount of $1,300,000. Both parties represented to the court at oral argument that this sum was much greater than anticipated and that the Plan of Reorganization, as proposed and as confirmed, does not adequately address the matter of how

these funds are to be used after they are split equitably among the parties. Given this lack of a safeguard, part of TD Bank's concern in this case is that Biltmore might distribute these settlement funds to Mr. McGee personally instead of reinvesting them in the company.

Although TD Bank filed a timely objection to Biltmore's proposed Plan (Doc. 123), arguing, *inter alia*, that that it was "not feasible" and was not "fair and equitable," Bank did not appeal the Bankruptcy Court's order confirming the Plan. The Court entered an Order confirming Biltmore's Chapter 11 Plan on April 24, 2013.

### B. Underlying State Court Action

On July 23, 2012, TD Bank obtained a money judgment exceeding $2,500,000 against Biltmore's president, Walter McGee, in Henderson County Superior Court, Case No. 11-CVS-923, TD Bank, N.A. v. Walter T. McGee (July 23, 2012) ("the Underlying State Court Action") (Doc. 161). As noted above, Mr. McGee owns 100 % of Biltmore's issued and outstanding common stock. Section 1-324.3 of the North Carolina General Statutes states that any share in a joint stock company incorporated in North Carolina owned by a judgment debtor may be taken and sold as part of the execution process. N.C. GEN. STAT. § 1-324.3. The statute also provides that the "clerk, cashier, or other officer of such company who has at the time the custody of the books of the company shall, upon being shown the writ of execution, give to the officer having it a certificate of the number of shares or amount of the interest held by the defendant in the company." Id. TD Bank sought to avail itself of such remedy by collecting on its judgment against Mr. McGee, including having Mr. McGee's Biltmore stock seized and sold.

On December 10, 2013, TD Bank had a Writ of Execution issued against Mr. McGee. On December 12, 2013, TD Bank filed a Motion for Supplemental Proceeding in Henderson County

Superior Court, requesting that the Clerk of Court set a hearing for Biltmore Investments to respond regarding the assets of Mr. McGee that it held – particularly the number of shares of stock in the name of Walter T. McGee. (Doc. 161). TD Bank stated in this Motion that its "sole goal [was] to recover any potential assets of McGee—who is not a Debtor in bankruptcy and not protected by any automatic stay provisions—to be used to satisfy the judgment entered against McGee." Id. TD Bank also requested the Clerk to enter an order requiring Mr. McGee and Biltmore Investments to refrain from any transfer of the shares of stock until a hearing was held. (Doc. 161, Ex. A).

Before the initial hearing in the Supplemental Proceeding, counsel for the parties disputed whether the automatic stay provisions of 11 U.S.C. § 362 prohibited the Henderson County Clerk of Court from granting TD Bank's requested relief. TD Bank then filed a Motion with the Bankruptcy Court requesting an order clarifying that the automatic stay did not apply to Mr. McGee or his stock in Biltmore. (Doc. 161). Biltmore filed a response to the motion and requested a hearing. (Doc. 164).

### C. The Bankruptcy Court's Decision

The Bankruptcy Court heard arguments on February 19, 2014. On February 27, 2014, the Bankruptcy Court entered an Order granting Bank's Motion (the "First Order") and concluding:

1) The automatic stay provisions 11 U.S.C. § 362 apply only to acts affecting property of the Debtor's estate;
2) Because Mr. McGee's stock is not an asset of the Debtor's estate, the automatic stay provisions of 11 U.S.C. § 362 do not apply;
3) The automatic stay provisions of 11 U.S.C. § 362 do not prohibit TD Bank from pursuing the seizure and sale of the stock through the North Carolina state-court proceedings initiated by TD Bank; and
4) Any action by the Henderson County, North Carolina, Superior Court relating to the seizure and sale of the stock will not violate 11 U.S.C. § 362.

Docket No. 172.

The Bankruptcy Court also ruled that it was declining Biltmore's request that the Bankruptcy Court invoke its inherent powers under 11 U.S.C. §105 to impose an automatic stay in the Underlying State Court Action initiated by TD Bank. Subsequently, on March 10, 2014, Biltmore filed a Motion for Rehearing and/or Reconsideration. (Docket No. 174). In Biltmore's Motion for Rehearing and/or Reconsideration, Biltmore sought clarification as to what legal standard the Bankruptcy Court applied in granting Bank's Motion. The Bankruptcy Court held a hearing on Biltmore's Motion on April 8, 2014, confirming that in making its initial decision, it had relied on its understanding of the "unusual circumstances" test for non-debtors set forth in A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986). (Doc. 194). The Bankruptcy Court affirmed its decision, explaining that it found no extraordinary circumstance here that would justify extending the stay to Mr. McGee, a non-debtor. The court then issued an order denying Biltmore's Motion for Rehearing and/or Reconsideration on April 10, 2014 (the "Second Order"). (Docket No. 186). On April 22, 2014, Biltmore appealed the matter in this court. (Docket No. 187).

**II.  STANDARD OF REVIEW**

The parties dispute whether Biltmore appealed both orders from the Bankruptcy Court or only the Bankruptcy Court's Second Order. The court finds that Biltmore appealed both the First Order (granting TD Bank's Motion that the Stay Does not Apply) and the Second Order (affirming the First Order and denying Biltmore's Motion for Rehearing and/or Reconsideration). Accordingly, the applicable standard of review for this matter is "clearly erroneous" as to findings of fact, and *de novo* as to conclusions of law. Tavenner v. Smoot, 257

F.3d 401, 405 (4th Cir. 2001), cert. denied, 534 U.S. 1116 (2002); Fed. R. Bankr. P. 8013.

### III. ANALYSIS

#### A. The Automatic Stay Provision

Biltmore argues that the Bankruptcy Court erred in holding that the automatic stay provision does not apply to Mr. McGee's stock. It argues that the Bankruptcy Court took a "far too narrow" approach in analyzing the automatic stay provisions and that the stay applies to Mr. McGee's stock "because of the direct relationship between the ownership interest that Walter McGee has in Biltmore Investments and the successful completion of [its Chapter 11 plan]." (Doc. 169 at 13). Biltmore also argues that the Bankruptcy Court failed to consider that Biltmore was in the process of successfully reorganizing its Chapter 11 case and that Mr. McGee's ownership of shares is essential to Biltmore's efforts to reorganize. Finally, Biltmore argues that the Bankruptcy Court erred in not considering the strong likelihood that TD Bank's writ of execution would have a significant impact on Biltmore's estate such that it had the potential to derail Biltmore's reorganization plan.

TD Bank argues that Biltmore's appeal should be dismissed because the Bankruptcy Court did not abuse its discretion in denying Biltmore's motion for reconsideration.[1] It argues that Biltmore's motion for reconsideration was nothing more than an attempt to raise new arguments that it could have made at the original hearing, and that it failed to establish any error in the Bankruptcy Court's First Order.

---

[1] TD Bank argued in its Appellee Brief that Biltmore only appealed the Bankruptcy Court's Second Order, and as such, review of that ruling was subject to an abuse of discretion standard. The court disagrees.

In reviewing this matter *de novo*, the court considers whether the Bankruptcy Court erred in holding that the automatic stay provisions of 11 U.S.C. § 362 do not apply to Mr. McGee's stock. To find the existence of "unusual circumstances" that justify extending the automatic stay to Mr. McGee, the court must find "such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and a judgment against the third-party defendant will in effect be a judgment against the debtor." A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986). Under Fourth Circuit precedent, a finding of "unusual circumstances" in this case requires facts sufficient to conclude that a sale of McGee's stock would "in effect" be an action against the Debtor. The court finds that such a relationship does, in fact, exist in this matter.

Here, Mr. McGee is the sole common shareholder whose ownership interests allow him to control the company. What is ultimately at issue in this matter is control of Biltmore. TD Bank's state court actions amount to an action to obtain possession of, or exercise control over, property of the debtor's bankruptcy estate (Mr. McGee's stock), which is, in effect, an action against the debtor. The court finds that the relationship between Mr. McGee and Biltmore in this matter gives rise to "unusual circumstances" under the 4th Circuit's test in A.H. Robins.

Here, absent the protection of the stay provision, the potential harm to Biltmore and its reorganization efforts is significant. If TD Bank is allowed to proceed with its supplemental proceeding in state court and have Mr. McGee's stock sold pursuant to its execution activities against Mr. McGee, there is the potential that TD Bank or a third party will purchase and acquire the Biltmore stock at sale. If someone other than Mr. McGee comes to own the Biltmore stock, there is the further potential that the new stockholder may not act in the best interests of Biltmore

by, for example, failing to comply with the terms of the confirmed Plan or simply liquidating the company.  Common sense demands that where a debtor and creditor are bound by the terms of a legitimate reorganization plan, the creditor may not initiate an action that essentially prevents the debtor's reorganization. Here, stay protection is needed to allow the reorganization process to run its course as stipulated in the Reorganization Plan.

In affording such protection to Mr. McGee's Biltmore stock, the court is also cognizant of TD Bank's legitimate concern over any possible attempts by Biltmore to distribute settlement proceeds to Mr. McGee.  As was made clear at oral arguments, the D'Anza Adversary Proceeding settlement proceeds appear to be a windfall recovery not contemplated by the parties or the Bankruptcy Court at the confirmation stage.  Biltmore's current confirmed Plan does not protect TD Bank and the other creditors from dissipation of the settlement proceeds from the D'Anza Adversary Proceeding – at least as to those proceeds allocated to Biltmore. Therefore, the court concludes that equity also demands that Biltmore amend its confirmed Reorganization Plan before the Bankruptcy Court in order to protect TD Bank and the other creditors from dissipation of the settlement proceeds during the term of the Plan. These amendments shall be subject to approval by the Bankruptcy Court.

### B. Biltmore's Argument for Injunctive Relief

Biltmore also argued on appeal that the Bankruptcy Court erred when it denied to exercise its powers under Section 105 of the Bankruptcy Code to stay or enjoin the Bank from seeking to seize and sell the Biltmore stock of Mr. McGee.  Because this Court finds that "unusual circumstances" exist to extend the automatic stay under 11 U.S.C. § 362(a)(1), it need

not address the propriety of the Bankruptcy Court's denial of Biltmore's oral motion under Section 105 of the Bankruptcy Code.

### IV. CONCLUSION

The court finds that "unusual circumstances" exist to justify extending the automatic stay under 11 U.S.C. § 362(a)(1) to Walter McGee and prohibiting TD Bank from taking any further action, in state court or otherwise, to seize and sell Biltmore stock owned by McGee. Therefore, the court reverses the Bankruptcy Court's First Order and remands this case to the Bankruptcy Court for further proceedings consistent with this decision. Because this Court reverses the First Order, it need not address the appeal of the Second Order Denying Biltmore's Motion for Rehearing and/or Reconsideration.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Order of the Bankruptcy Court, dated February 27, 2014, is **REVERSED**, and TD Bank, N.A., its successors and assigns, is stayed from taking any action directed at Walter T. McGee, in state court or otherwise, to seize or sell his shares of stock in Biltmore Investments, LTD.

**IT IS FURTHER ORDERED** that Biltmore, within 45 days of this order, shall file a motion in Bankruptcy Court to modify its Chapter 11 Plan consistent with this order. The modified Plan should provide:

1. that there be there be no cash distributions (other than routine expenses & remuneration incident to, among other things, management of Bear Wallow Mobile Home Park and commissions relative to real estate, business brokerage and consulting activities) to Walter T. McGee, his assigns, or to any insiders of Biltmore

Investments, LTD. prior to payment in full of all creditors provided for in the plan;

2. that there be there be no cash distributions of the funds being held by Biltmore Investments LTD. as a result of the settlement of an adversary proceeding, including the D'Anza Adversary Proceeding discussed in this Order, other than in the ordinary course of business, to Walter T. McGee, his assigns, or any insiders of Biltmore Investments, LTD. before payment in full of all creditors under the plan, unless having first given notice to creditors of the proposed distribution; and

3. that Biltmore Investments, Ltd. be prohibited from using any portion of the settlement proceeds from the D'Anza Adversary Proceeding outside the ordinary course of business, except by motion for authority to do so in the Bankruptcy case, with notice and the opportunity for hearing provided to creditors under the Plan, and approval by the Bankruptcy Court.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Bankruptcy Court for further proceedings consistent with this decision.

Signed: December 22, 2014

Max O. Cogburn Jr.
United States District Judge